# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Action No. 19-cr-00496-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID YOUNG,

    Defendant.

---

## ORDER DENYING MOTION TO SUPPRESS

---

This matter is before the Court on Defendant David Young's Motion to Suppress Evidence and Statements Obtained Pursuant to Search Incident to December 2, 2019 Arrest. (Doc. # 37.) The United States ("the Government") filed a Response (Doc. # 39) on March 4, 2020. For the following reasons, the Motion is denied.

### I.    BACKGROUND

On October 9, 2019, law enforcement contacted Defendant at a service station in Denver, Colorado. Officers were responding to a call that reported that an individual matching Defendant's description had been acting aggressively towards the service station clerk. The officers entered the service station and verbally confirmed with the clerk that Defendant was the person who had been allegedly causing a disturbance. After Defendant disregarded several of the officers' advisements not to reach for his pockets, the officers decided to conduct a pat-down of Defendant's clothing. The pat-

down revealed that Defendant was carrying a firearm, and Defendant was subsequently arrested and released on bond.

Thereafter, a federal grand jury returned an indictment which charged Defendant with one count of being a felon in possession of a firearm. (Doc. # 1.)

On December 2, 2019, ATF Special Agents went to Defendant's residence "to gather intelligence about [Defendant's] whereabouts so they could arrest him another day on the outstanding federal arrest warrant." (Doc. # 39 at 3.) However, the agents decided to execute the arrest warrant on that day after Defendant allegedly offered to sell one of the agents narcotics, and the agents observed Defendant exchange narcotics with a third party. (*Id*.) As a result, the grand jury returned a superseding indictment based on the events that took place on December 2.

## II. DISCUSSION

Defendant argues that "[t]here was insufficient reasonable suspicion to warrant a detention and frisk of [Defendant] on October 9, 2019," and that the evidence law enforcement obtained on December 2, 2019, was tainted as a result of the initial unlawful detention. (Doc. # 37 at 9.) The Court disagrees. The evidence indicates that law enforcement had reasonable suspicion to justify the stopping and frisking of Defendant on October 9, 2019. As a consequence, Defendant's December 2, 2019 arrest was not based on unlawfully obtained evidence.

### A. LEGAL STANDARD

It is undisputed that Defendant's initial contact with law enforcement on October 9, 2019, constituted an investigatory, or "*Terry*," stop and frisk. Investigatory stops are

brief seizures that fall short of traditional arrests, and they are lawful if they are justified by a reasonable suspicion that an individual is engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 28 (1968); *United States v. Rodriguez*, 739 F.3d 481, 485 (10th Cir. 2013) ("a police officer may briefly detain an individual suspected of criminal activity if the officer has reasonable suspicion based on articulable facts, together with rational inferences to be drawn therefrom, that criminal activity is afoot." (citing *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002))). "Additionally, *Terry* permits [an] officer to conduct a protective frisk of such individual if the officer reasonably believes he might be armed and dangerous." *Rodriguez*, 739 F.3d at 485.

Pursuant to the reasonable suspicion standard, courts "ask 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id*. (quoting *Terry*, 392 U.S. at 20). "Reasonable suspicion arises from the combination of an officer's understanding of the facts and [her] understanding of the relevant law." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014). "The reasonable suspicion analysis does not consider each of an officer's observations in isolation, but rather is based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *United States v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (quotation marks and citation omitted). "The circumstances necessary to arouse reasonable suspicion fall '**considerably short of satisfying a preponderance of the evidence standard**.'" *Rodriguez*, 739 F.3d at 485 (emphasis added) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Thus, reasonable suspicion "is not,

3

and is not meant to be, an onerous standard." *United States v. Gurule*, 935 F.3d 878, 885 (10th Cir. 2019) (quoting *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015)), *cert. denied*, No. 19-7507, 2020 WL 981935 (U.S. Mar. 2, 2020).

**B.     ANALYSIS**

In the instant case, law enforcement's decision to stop Defendant, and subsequently conduct a pat-down, was supported by a reasonable suspicion that Defendant was engaged in criminal activity. The following factual circumstances formed the basis of law enforcement's decision-making:

- Officers Krcal and Long responded to a call that reported a disturbance at a service station (Doc. # 17-1 at 1);

- The call notes indicated that "a customer was yelling inside of the store and causing a disturbance." (*Id.*);

- Upon their arrival at the service station, the officers observed that Defendant matched the description of the individual identified in the call notes (*id.*);

- The officers further observed Defendant waving his hands and arms at the service station clerk (*id.*);

- Defendant approached the door of the service station and opened it as the officers approached (Krcal Body Camera Video ("KBCV") at 00:27/6:59);

- Officer Krcal told Defendant to "keep your hands where I can see them," and Defendant reached for his pocket for the first time (KBCV at 00:32/6:59);

- Officer Krcal told Defendant, "don't put your hands in your pocket," and she directed Defendant inside the service station (*id.*);

4

- Defendant reached for his pocket for a second time (*id*. at 00:36/6:59);
- Officer Krcal asked the service station clerk, "is this the guy," and the clerk responded, "yes" (*id*.);
- Officer Long informed Defendant that he was not under arrest but was only being detained while the officers conducted an investigation (*id*. at 00:50/6:59);
- Defendant stated that he wanted to show the officers "what's in my pockets," and the officers told him "no, don't reach in your pocket" multiple times (*id*. at 00:54/6:59);
- Despite the officers' advisements, Defendant attempted to reach into his pockets for the third time (*id*.);
- Officer Long conducted a pat-down of Defendant's clothing and stated, "gun" (*id*. at 01:07/6:59).

In summary, the officers were aware that an individual was causing a disturbance at a service station and acting aggressively towards the clerk. Officers visually identified Defendant as an individual who matched the description of the person from the call notes, and they subsequently confirmed that Defendant was the person allegedly causing the disturbance by asking the clerk. Despite being told multiple times not to reach into his pockets, Defendant reached for them three times in less than a minute. Notably, the officers did not conduct a pat-down until after the third time Defendant attempted to reach for his pockets.

Based on the officers' awareness of Defendant's allegedly aggressive behavior and his disregard for instructions not to reach for his pockets, the Court finds that the officers had a reasonable suspicion that Defendant may have been engaged in criminal

5

conduct (e.g., disturbing the peace) and that he may have been armed and dangerous. *See, e.g., United States v. Hoffman*, 762 F. App'x 397, 399 (9th Cir. 2019) (concluding defendant's "increasingly combative behavior, furtive movements . . ., and his **repeated attempts to place his hands in his pockets against [officer's] repeated instructions justified the decision to initiate a *Terry* frisk**." (emphasis added)); *United States v. Briggs*, 720 F.3d 1281, 1288 (10th Cir. 2013) (finding officer's testimony that "based on his training and experience . . . people who carry weapons often carry them at their waistline and that people who carry weapons illegally 'tend to touch [the weapon] or grab for it when coming in contact with the police,'" supported officer's reasonable suspicion that defendant may be armed and dangerous); *United States v. Dancy*, 640 F.3d 455, 461 (1st Cir. 2011) (concluding reasonable suspicion for stop and frisk existed when defendant matched description of alleged shooter and defendant reached for his pocket in manner that made experienced officer concerned that defendant was reaching for a weapon).

### III.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion to Suppress (Doc. # 37) is DENIED. It is

FURTHER ORDERED that the Hearing set for March 11, 2020 is VACATED.

DATED: March 9, 2020

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge

6